UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

LASHONDA W.[1],                              )
                                             )
    Plaintiff,                              )
                                             )
v.                                           )     CIVIL NO. 3:21cv952
                                             )
KILOLO KIJAKAZI, Acting                      )
Commissioner of Social Security,             )
                                             )
    Defendant.                              )

OPINION AND ORDER

    This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) under Title XVI of the Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

    The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2

2. The claimant has not engaged in substantial gainful activity since May 7, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: history of concussion/closed head injury with MRI documentation of encephalomalacia, hypertension, persistent alcohol use disorder, bipolar disorder, major depressive disorder, post traumatic stress disorder (PTSD), anxiety disorder, panic disorder, mood disorder, and attention deficit/hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c))

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work featuring lifting, carrying, pushing, and pulling up to twenty (20) pounds occasionally and ten (10) pounds frequently; standing or walking up to six (6) hours of an eight-hour workday and sitting up to six (6) hours of an eight-hour workday; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can frequently handle and finger with her bilateral upper extremities; cannot engage in odor detection or tasting as part of her work duties; cannot have concentrated exposure to hazards such as dangerous moving machinery or unprotected heights; she can occasionally interact with supervisors, co-workers, and the general public; she cannot perform fast-pace[d] production line work due to some mood lability and anxiety management problems; can perform routine tasks with no significant change during the workday; she cannot work in environments likely to expose her to accessible alcoholic beverages; and she cannot operate a motorized vehicle as part of work duties.

6. The claimant is capable of performing past relevant work as a housekeeping cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 7, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-22).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on June 20, 2022.  On July 29, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on August 27, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 4 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ improperly assessed her character by making multiple references to her alcohol use. However, Plaintiff points to nowhere in the decision in which the ALJ suggests that Plaintiff's subjective complaints were less credible

4

simply because of her alcohol use. Rather, the ALJ found that Plaintiff's persistent alcohol use disorder was a severe impairment (Tr. 13) and properly discussed evidence bearing on that impairment's impact on Plaintiff's ability to function (Tr. 18-21). As the ALJ properly noted, because Plaintiff was not disabled even when including the effects of her alcohol use, the ALJ was not required to discuss whether Plaintiff's alcohol use was a contributing factor material to the determination of disability (Tr. 20). 20 C.F.R. § 404.1535. However, discussion of her alcohol use was still appropriate given its frequent notation within the record (Tr. 938-49, 990, 1014, 1118, 1133, 1209, 1214, 1652, 1676, 1696, 1715, 1721, 1726) and its potential impact on Plaintiff's other conditions.

Plaintiff next contends that the ALJ improperly discounted her alleged need to urinate frequently when frequent urination was the intended effect of Losartan/HCTZ, a medication Plaintiff was prescribed for hypertension. However, there is only a single reference to Plaintiff being prescribed Losartan/HCTZ, in December 2020 (Tr. 1709), and she was noted not to be taking it the following month (Tr. 1721). Otherwise, her hypertension medication was generally either Losartan (without HCTZ) or irbesartan (E.g., Tr. 214, 217, 222, 227, 231, 1680, 1693, 1696-99, 1703-05, 1712, 1716). As the Commissioner points out neither of these medications is a diuretic that is intended to cause frequent urination. Plaintiff asserts in her reply brief that she had been advised by her doctors to increase her fluid intake which supports her contention that she has the need to urinate frequently, as much as hourly.  Plaintiff asserts that her need to urinate frequently should have been included as a limitation in the RFC assessment.  However, even if such a limitation had been included in the RFC, there is nothing to support the implied contention that Plaintiff would have been unable to work, and thus remand would be futile.  The ALJ found

5

that Plaintiff could work her previous job as a cleaner or housekeeper. These sorts of jobs are in homes or businesses that usually have functioning bathrooms. Having to stop cleaning to take a quick potty break is not work preclusive in these circumstances and, thus, there is no basis for remand on this point.

Plaintiff also contends that the ALJ did not properly evaluate her polycystic kidney disease and overlooked an abnormal renal function panel. However, every test result in the allegedly abnormal panel from May 2018 is within the normal range (Tr. 840). There is a note in the lab results indicating what CGFR values would indicate dysfunction, but that note is clear that a result of greater than 60 ml/min/1.73 sqm is normal, and Plaintiff's result of 87.1 is thus not indicative of kidney dysfunction (Tr. 840). The ALJ did not err on this point. In any event, the ALJ did find that Plaintiff's polycystic kidney disease was medically determinable, albeit not severe, and considered it in assessing her ability to function (Tr. 14). Plaintiff asserts that the ALJ "failed to grasp" the impact of this impairment on her functioning but provides no evidence that this impairment resulted in limitations not accounted for by the ALJ.

Next, Plaintiff asserts that the ALJ did not properly consider alternate explanations for her alleged non-compliance with treatment. During the subjective complaint analysis, the ALJ noted Plaintiff's non-compliance twice. First, the ALJ noted that, in May 2020, Plaintiff reported that she had not been taking her medications because she could not remember where she put them (Tr. 18, 1103). Second, in September 2020, Plaintiff's therapist noted that Plaintiff had not been compliant recently and addressed the importance of compliance (Tr. 18, 985). These notations were minor parts of the analysis and reflect factually accurate summaries of the relevant records. Plaintiff asserts that there may have been a justifiable (perhaps medical) basis for this non-

6

compliance, but she does not identify any specific explanation or identify support in the record for such speculation.

Plaintiff also raises an argument concerning the side effects of Vyvanse, which Plaintiff was later unable to take due to high blood pressure. Plaintiff argues that the ALJ did not provide reasons for rejecting "testimony" concerning side effects, but she does not cite to any testimony that the ALJ allegedly rejected. Plaintiff also contends that the ALJ did not properly credit her testimony regarding the alleged difficulties she had at her work and that her testimony about those difficulties undermine the RFC assessment. However, Plaintiff cites no evidence to bolster that testimony, instead merely reiterating the allegations she asserts the ALJ should have credited.

Plaintiff next raises an unclear argument regarding her hand. Plaintiff appears to believe that the ALJ's admittedly accurate note that she was "doing well" and "had no pain" in January 2020 was somehow improper because, at a prior visit, Plaintiff was not doing quite as well (Tr. 13, 866, 1621). It is unclear why Plaintiff believes that the ALJ was required to ignore the improvement of her symptoms, and the ALJ's factually accurate statements are proper and supported.

Plaintiff also challenges what she calls the ALJ's "emphasis" on a normal nerve conduction study. However, the ALJ made a single, factually accurate statement: that a May 2020 right nerve conduction study/electromyogram was normal (Tr. 14, 915-16). The ALJ further stated that the underlying impairment, while not severe, was considered in assessing Plaintiff's RFC (Tr. 14). In challenging the ALJ's decision, Plaintiff does not even attempt to explain how the ALJ's single, factually accurate reference to this study constitutes an improper "emphasis" that rendered the ALJ's decision unsupported, nor does she explain what additional limitations

the ALJ should have found.

Plaintiff next contends that the ALJ did not properly evaluate the effects of surgery on her left hand. However, rather than cite any medical records to support these alleged effects, Plaintiff cites reference articles and, based on her own lay interpretation, offers her guess as to what limitations were "implicit" or "likely". Mere conjecture is not enough to warrant remand, and Plaintiff offers nothing more than such empty speculation.

Plaintiff next asserts that the ALJ did not properly consider the effects of a prior hernia repair on her functioning. However, Plaintiff does not present any evidence beyond a single reference from her hearing testimony to any functional limitations connected with her hernia repair. In fact, the record reflects that, after the hernia repair, Plaintiff had "done well" other than a draining suture sinus, and she underwent a successful repair on that draining suture sinus (Tr. 934-35). Plaintiff has presented no evidence that her hernia repair from 2017 resulted in any functional limitations beyond those in the ALJ's residual functional capacity finding, and the record belies the existence of any such limits.

Plaintiff next asserts that the ALJ erred in not adopting the testimony of medical expert Dr. Buechner that Plaintiff could not perform work involving ready access to chemicals. This argument lacks merit, for two reasons. First, the ALJ expressly found that Dr. Buechner's testimony in general was of "limited" value because Dr. Buechner did not have the opportunity to review nearly 800 pages of medical records (Tr. 19-20). In contrast, the ALJ was persuaded by the subsequent testimony of a different medical expert, Dr. Lace, who did have the opportunity to review such evidence and did not assess the limitation regarding chemicals (Tr. 18-20, 47). Second, even if such a limitation were included, there is no reason to believe it would preclude

Plaintiff from performing the occupations of marking clerk, mail clerk, and inspector of plastic products identified in the ALJ's alternative step five finding (Tr. 22).

As there is no basis for remand on any of Plaintiff's arguments, the decision will be affirmed.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: September 19, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court